## NICOLET ET ALS. *vs.* INSURANCE COMPANY.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

If a quantity of cotton in several warehouses, be insured to a given amount, and the insured suffers a loss by the destruction of cotton *in one of the warehouses* to the amount insured, he is entitled to full indemnification,

He is not compelled to reduce his claim in the proportion which the cotton destroyed, bears to the whole he had in the several warehouses.

This was a claim for loss under an insurance from fire. The policy stated, "that T. Nicolet & Co., had paid the defendants the sum of one hundred dollars, for insurance from loss or damage by fire, according to the tenor of the conditions hereunto annexed, not exceeding in each case the sum or sums hereinafter recited, upon the property herein described, in the place or places herein set forth and not elsewhere, (unless allowed by endorsement previously made, as set forth in the margin,) viz: on cotton to the amount of twenty thousand dollars, or as may appear to that extent located in their names, in seven named presses, say, twenty thousand dollars." On the same sheet were printed several articles entitled, "Conditions of Insurance." The first of which stated, that "each building must be separately valued and a specific sum insured thereon, and in like manner, a separate sum insured on the property contained therein." The eleventh article stated, "that for the further convenience of merchants and others, who have property in two distinct

buildings, the same may be insured with the customary average clause."

No average clause was written out, but proof was given of what was the usual average clause, and two witnesses proved, that it was usual to insert it in the policies of another office, viz: The Louisiana State Insurance Office, though they stated, no instance had occurred of a loss being paid under such circumstances.  On the back of the policy was endorsed, T. Nicolet & Co., cotton, six months, twenty thousand dollars at one-half per cent., one hundred dollars ; and it was proved, that from one-third to one-half per cent., was the current premium for the risk on a single press.

Hart's press, one of the seven, was burned, and the plaintiffs had therein at the time, five hundred and fifty-seven bales of cotton, of which four hundred and sixty-three, worth seventeen thousand eight hundred and forty-six dollars were lost, and ninety-four, the value of which was not shown, were saved.

There was also at the same time, in the other six presses, four hundred and fifty-seven bales, the value of which was not shown.

To the plaintiff's application for payment, the defendants objected, unless an account was furnished of the amount of cotton at risk in the remaining six presses, which plaintiffs refused to give.  Suit was then brought, the defendants paid eight thousand five hundred dollars without prejudice, and it was prosecuted for the balance.  There was a verdict and judgment for the plaintiffs, and the defendants appealed.

*Strawbridge*, for appellants.  *Lockett*, for appellees.

*Mathews, J.* delivered the opinion of the court.

This is a suit on a policy of insurance against loss or damage by fire on cotton located in several cotton presses situated in the city of New-Orleans.  The petitioners allege that they have suffered loss and damage to the amount of seventeen thousand eight hundred and forty-six dollars and eighty-two cents, in consequence of the destruction of cotton in one of the places where it was located, viz. in the cotton press of

EASTERN DIST.
*February*, 1832.
─────────
NICOLET ET ALS.
*vs.*
INSURANCE CO.
N. & B. Hart, wherein they had cotton to the value of twenty thousand dollars, the said press being burned and consumed by fire on the twelfth of January, 1830, and they claim as indemnity the amount first stated.

The answer of the defendants admits the important facts as set forth in the petition; but denies the plaintiffs' right to recover more than indemnity for a proportional loss of the cotton in Harts' press, averaging the damage sustained in that place by the entire value of all the cotton located in the other presses mentioned in the policy; and on a comparative estimation of loss on these principles, eight thousand five hundred dollars were paid to the plaintiffs, leaving a balance due (according to the principles for which they contend) of nine thousand three hundred and forty-six dollars and eighty-two cents, for which a verdict was found by a jury to whom the cause was submitted, and judgment being rendered in pursuance thereof the defendants appealed.

The sole question presented, by the case, to be determined, is whether the insurers are bound, according to a just and legal interpretation of their contract, to indemnify the insured to the full extent of their loss, or only *pro rata* on an average estimate of the amount lost, compared with the value of all the cotton stored in the various presses mentioned in the policy.

The counsel for the appellants relies on two principal grounds for a reversal of the judgment rendered by the court below. He insists: 1. That the loss must be averaged according to an express condition of the policy. 2. If such condition be not expressed in such a manner as to bind the insured to submit to average, a legal construction of the contract imposes on them this obligation. The clause of the policy assumed as giving a right to the insurers to claim the benefit of average, is found in the eleventh article of a printed paper attached to the contract of insurance, and headed conditions of insurance. These may be presumed to be the conditions on which insurances can be obtained by applicants to the company. They are twelve in number, and all favorable to the interests of the insurers; but certainly may be waived by

the party in whose favor they are stipulated; and if a con-
tract, by which risk is assumed, contain express agreements
legally irreconcilable with these printed conditions, the former
must prevail.    The article relied on is in these words : "For
the further convenience of merchants who may have property
in two or more distinct buildings, the same may be insured in
one sum with the customary average clause." Suppose, how-
ever, an insurance be made without this clause, would it
be the duty of a court, called on to interpret the contract of
the parties, to consider every thing as stipulated in it which it
might by a grant have contained, in the absence of any clause
to that effect? We think not. This article contains an
enunciation to the public that the New-Orleans Insurance
Company will insure property in two or more distinct build-
ings, in one sum, with the customary average clause, but does
not declare that they will not make such insurances without
that clause. In the article immediately preceding, it is
declared that " no policy for a shorter period than a year shall
be issued to cover other, than specific goods identified by marks
and numbers." But in the very policy before us we find this
company insuring property for six months only, without spe-
cification, either by marks or numbers, yet it is not pretended
that the contract is void on this account, although directly
opposed to the condition stated in the printed articles. The
absurdity of such a pretension is perhaps the reason why it
has not been urged against the plaintiffs. The difference of
absurdity is not easily perceived, between insisting on an
article which would entirely annul the contract, and one
which might radically change the nature and extent of the
obligations created by it. We are of opinion that the clause
relating to average, not being inserted in the body of the
policy, may be considered as waived.

It is true that in the case of *Cornett and Wife* vs. *The Hope
Insurance Company*, this court gave an interpretation to the
contract which enforced obligations, such as are imposed on
persons insured against loss or damage by fire, by the eighth
article of the printed conditions of insurance as published by
the New-Orleans Company.

47

EASTERN DIST.
*February*, 1832.
NICOLET ET ALS.
*vs.*
INSURANCE CO.

This article relates to the proof required to enable persons insured to recover indemnity for losses which they may have sustained by fire. It contains no provisions partaking either of the essence, or nature of the contract of insurance. It simply points out the manner in which the insured must proceed in order to enforce their claims against the insurers. Being a condition on which the intrinsic obligations of the contract do not depend, but only the mode of enforcing them ; and as it imposes a duty on neither of the contracting parties inconsistent with the stipulations contained in the body of the contract, they may properly be considered as having contracted in relation thereto, and that the obligees are bound to perform all things therein required, necessary to a recovery as making a part of their agreement. No evasion of the conditions imposed by this article ought to be presumed, as was done in the case of Workman against the Louisiana Insurance Company, in relation to descriptions of houses, as required by the first article of their printed conditions ; because the main contract in the former case was in no respect contradictory to, or irreconcilable with the article touching the proof required by the insurers, before their consent to pay for loss would become final and conclusive. Viewed in these lights, it is evident that there exists no contradiction or hostility between the doctrines of those cases ; some of the *obiter dictums* in the last decided, may possibly have been too general ; but that which was done, we still believe to have been legally and correctly done.

Whether the defendants in the present case be bound according to a just and legal interpretation of their contract, to indemnify the insured to the full extent of their loss or only by average (leaving out of view the clause of the eleventh article, which might have been inserted) is a question not of easy solution.

The rules which would govern in a case of marine insurance similar to the present, appear to be well settled, and the principle which prevails in the construction of a contract of the former kind, seems to be firmly established and fixed by law and usage in most commercial countries ; and has been

adopted as a rule of decision in the United States. According to this principle, in the event of a partial loss on vessels or merchandise insured against risks by sea, an average takes place, regulated by a per centage on the whole value of the property insured, whether that value be entirely covered by the policy or not. If the insurance be for less than the whole, the underwriters are responsible only in the proportion which the part of which they have assumed the risk, bears to the whole. *Phillips on In. p.* 372. *Park,* 137.

The doctrine established in England and the United States, relative to adjustment in cases of partial loss on property covered by marine insurances, seems to prevail in France to the same extent, in contracts of insurance against loss and damage by fire, as appears in a new treatise on insurance against fire, written by Boudousquie, and edited in 1829. See *this work, pp.* 187, 357–8.

How a difference in rules of interpretation of a contract of assurance against loss by fire, and one against loss by sea, can reasonably exist, it is difficult to perceive. The first principles on which any course of reasoning can be fairly pursued are certainly the same in both cases. The intention of the parties to either contract must be sought for in the expressions of the instrument from which these obligations result. Let us examine the policy now under consideration, independent of that general usage which has assumed the force of law, in relation to marine insurances. The plaintiffs procured insurance on cotton to the amount of twenty thousand dollars, located in their names in seven different storehouses, for which they paid a premium of one hundred dollars. In consideration of this premium, the company promised to pay to the assured for all such damage and loss as should happen by fire to the property insured, not to exceed the sum of twenty thousand dollars. It appears by the evidence of the case, that the plaintiffs had cotton to the value of thirty-nine thousand and eighty-four dollars (located in the various places as designated in the policy) at the time when part of it, valued at seventeen thousand eight hundred and

forty-six dollars, was destroyed by fire by the burning of one of the warehouses in which it was stored. An obligation to pay more than twenty thousand dollars could, in no event, have been imposed on the insurers. If the property at risk had been of a value less than this amount, the assured would have been entitled to no more than an indemnity, equivalent to their loss and the sum stipulated in the contract reducible to the actual damage. If the property insured exceeded the amount covered by the policy, the indemnity, in the event of a total loss, could not be enlarged so as to afford full protection. In the first hypothesis the contract is favorable to the insurers, because less was put at risk than an equivalent to the premium; or if they are obliged to return a part, the premium and risk might be deemed correlatives. In the second, they are clearly so, according to the contract. This correspondence between premium and risk is, perhaps, a fundamental principle of all agreements to indemnify for losses. But in a contract where the obligation to pay on account of loss, can in no event surpass the relative premium paid, it would seem, that justice ought to require the obligors to make good the full amount of damages sustained by the destruction of any part of the property insured to that amount. The amount insured by the present policy was not sufficient to cover the whole of the property put at risk, and consequently could not protect all the parts. All were, however, in danger, and it may as well be considered as attaching to the part destroyed as that which was saved from the fire. The company bind themselves by the contract to pay, make good and satisfy all such damage or loss as shall happen by fire to the property insured; and it is shown by the evidence that loss has been sustained amounting to seventeen thousand eight hundred and forty-six dollars. Looking alone to this contract could it be said in truth that its obligation may be discharged by the payment of a sum less than all the damage and loss suffered by the insured? Their intention was evidently to cover the risks on all and every, or any parts or parcels of the cotton insured, to the extent of twenty thousand dollars, or under that sum, as loss might happen; and there is nothing on the face

of the policy which shows that the insurers did not acquiesce in this intention.   A different interpretation would not afford complete indemnity, although such would be required in conformity with rules as laid down in Boudousquie's Treatise on Insurance against Fire; but they are not the rules of construction which seem to prevail in the United States; and the latter we think may be justly adopted in the decision of the present case, without entering into any discussion of the weight of arguments which might be urged in opposition. See *Phillips on Ins. p.* 375, *note, and* 6 *Pickering, p.* 186, *Reports of Cases in the Supreme Court of Massachusetts.*

The verdict and judgment of the District Court is correct, except in allowing interest.   The claim was uncertain and unliquidated until that judgment was rendered, and interest should not have been allowed in this respect, it is precisely like the case of Workman *vs.* Louisiana Insurance Company, in which interest was refused.

It is, therefore, ordered, adjudged and decreed, that the judgment of said court be reversed and annulled.   And proceeding here to give such judgment as ought there to have been given, it is further ordered, adjudged and decreed, that the plaintiffs and appellees do recover from the defendants and appellants the sum of nine thousand three hundred and forty-six dollars and eighty-two cents, with costs in the court below ; those of the appeal to be borne by the appellees.